UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY GREENE,

       Petitioner,

                                                                  Case Number: 2:09-CV-14597

v.                                                         Honorable Patrick J. Duggan

BLAINE LAFLER,

       Respondent.

_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS AND GRANTING CERTIFICATE OF APPEALABILITY

Petitioner Jimmy Greene, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions in 2002 in the Circuit Court for Washtenaw County, Michigan, for assault on a pregnant person resulting in stillbirth in violation of Michigan Compiled Laws § 750.90a and assault with intent to do great bodily harm less than murder in violation of Michigan Compiled Laws § 750.84. Now before the Court is Respondent's motion to dismiss for failure to comply with the statute of limitations. Petitioner and Respondent agree that, absent equitable tolling, the petition is untimely. Petitioner argues that equitable tolling is justified by his attorney's egregious misconduct and because he is actually innocent of assault on a pregnant person resulting in stillbirth because the baby was born alive. For the reasons stated, the Court finds that Petitioner is not entitled to equitable tolling and the motion to dismiss is granted.

## I. Statute of Limitations

As relevant to Petitioner's case, a prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year limitations period does not begin to run until the time for filing a petition for a writ of certiorari to the United States Supreme Court has expired. *Isham v. Randle*, 226 F.3d 69, 694-95 (6th Cir. 2000). The time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). A properly filed application for state post-conviction relief, while tolling the statute of limitations, does not serve to restart the limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Here, Petitioner appealed his conviction first to the Michigan Court of Appeals, and then to the Michigan Supreme Court. The Michigan Supreme Court denied his application for leave to appeal on September 28, 2004. Petitioner had ninety days from that date to file a petition for writ of certiorari with the United States Supreme Court, which he did not do. Thus, his conviction became final on December 24, 2004, when the time period for seeking certiorari expired. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (one-year statute of limitations does not begin to run until the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired). The last day on which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court is not counted toward the one-year limitations period

2

applicable to habeas corpus petitions. *Id.* at 285. Accordingly, the limitations period commenced on December 25, 2004. Absent equitable tolling, the limitations period continued to run, uninterrupted, until it expired one year later, on December 27, 2005.[1]

Petitioner's mother retained Attorney Andrew Wilkins to file a state court motion for relief from judgment and a federal habeas corpus petition on Petitioner's behalf. The Flat Fee Agreement included in Petitioner's appendix to his habeas corpus petition shows that Wilkins was owed $6,000 for his services, $4,500 upon being retained and $1,500 due within three weeks. By affidavit, Petitioner's mother states that she paid $4,500 on May 24, 2005, and the balance, on May 25, 2005. Nevertheless, Wilkins failed to file a motion for relief from judgment in the trial court or a federal habeas corpus petition.

On August 16, 2007, Petitioner filed a *pro se* motion for relief from judgment in the Washtenaw County Circuit Court. The motion was denied on September 24, 2007. The denial of Petitioner's motion for relief from judgment became final on June 23, 2009, when the Michigan Supreme Court denied discretionary review. *People v. Greene*, 483 Mich. 1107, 766 N.W.2d 850 (2009). Petitioner filed the pending petition for a writ of habeas corpus five months later, on November 23, 2009.

## II. Equitable Tolling

Equitable tolling is available to toll a statute of limitations when "'a litigant's

---

[1] December 25, 2005 was a Sunday. The legal holiday, therefore, was observed on Monday, December 26, 2005. December 27, 2005 was the next day that was not a legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The one-year limitations period applicable to § 2254 is "subject to equitable tolling in appropriate cases." *See Holland v. Florida*, – U.S. – , –, 130 S. Ct. 2549, 2560 (2010). To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 594 U.S. 327, 336 (2007)(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A claim of actual innocence may also justify equitable tolling in certain circumstances. *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Robertson*, 624 F.3d at 784. Petitioner asserts two bases for equitably tolling: his attorney's egregious conduct and actual innocence.

### A. Ineffective Assistance of Counsel

First, Petitioner argues that his attorney's conduct warrants equitable tolling. The Supreme Court has long held that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect" that causes an attorney to miss a deadline. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990). But, the Supreme Court also recognizes that "unprofessional attorney conduct may, in certain circumstances, prove egregious and can be extraordinary" enough to satisfy the "extraordinary circumstances" prong of equitable tolling. *Holland*, 130 S. Ct.

at 2564. Petitioner argues that his attorney's conduct was so egregious and extraordinary as to satisfy the extraordinary circumstances prong. Respondent argues that this case is more "garden variety" neglect than "extraordinary" unprofessional conduct.

Respondent does not dispute that Petitioner retained and paid Wilkins $6,000 to file a motion for relief from judgment and habeas petition in May 2005. Nor is it disputed that Wilkins failed to file anything in either court. Wilkins' license to practice law in the State of Michigan was revoked, effective June 17, 2006. *See* Notice of Revocation and Restitution, No. 06-40-GA. The revocation was based on Wilkins' misconduct in 12 matters. The Attorney Discipline Board found that Wilkins' misconduct included: failure to act with a reasonable diligence and promptness; failure to keep clients reasonably informed regarding the status of their matters; failure to refund the unearned portion of fees; misappropriation of client funds; and failure to answer 14 requests for investigation. *Id.*

Respondent argues that Petitioner has not demonstrated a lack of notice or ignorance of the filing deadline. Petitioner, however, does not seek equitable tolling on that basis. He seeks equitable tolling because he believed he had retained an attorney who would file the appropriate papers on his behalf. "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Holland*, 130 S. Ct. at 2568 (Alito, J. concurring). It is clear that, in this case, the conduct of Petitioner's attorney was egregious and he was not operating as Petitioner's agent.

But, the inquiry does not end with a finding that counsel's conduct went beyond garden variety ineffectiveness. Where a petitioner shows that an attorney's actions constitute sufficient extraordinary circumstances to warrant equitable tolling, he must also show that he has been pursuing his rights diligently to be entitled to equitable tolling. *Robertson*, 624 F.3d at 786.

The Court considers two discrete time periods to evaluate Petitioner's diligence: (i) the time that elapsed between when counsel was retained and when Petitioner filed his motion for relief from judgment – approximately 2 years, 3 months, and (ii) the time that passed from the conclusion of collateral review in state court and the filing of the habeas petition – five months.

With respect to the first period, Respondent argues that Wilkins should have realized sooner that his attorney was taking no action on his behalf. Petitioner does not identify a point at which he realized that Wilkins had not and would not file a petition. He states in an affidavit that after Wilkins was paid, Wilkins stopped communicating with Petitioner and failed to respond to Petitioner's occasional letters inquiring about his case. Petitioner was not unreasonable in assuming that Wilkins was doing what he had been paid to do and that his motion for relief from judgment was proceeding through the state courts. The Court finds that the long delay between the time Petitioner retained Wilkins and the time he finally filed his *pro se* motion in state court does not establish a lack of diligence.

The Court reaches a different conclusion regarding the second delay. The five-

month delay following the conclusion of state court collateral review, although much shorter than the first delay, occurred under far different circumstances. By the time Petitioner filed his motion for relief from judgment in state court, he was proceeding *pro se*. It had become apparent to Petitioner by that time that Wilkins was not fulfilling his duties as an attorney and not representing Petitioner's interests. Petitioner also should have been aware that the time for filing a habeas corpus petition was one year from the finality of his conviction and that the limitations period was not re-started by the filing of a motion for relief from judgment. Moreover, the habeas petition contains claims already presented and developed in state court. If Petitioner had been responsible for familiarizing himself with the law and crafting arguments from scratch, a delay of five months may not show an absence of diligence. But, in this case, he did not have to do so.

In *Pace v. DiGuglielmo*, 544 U.S. 408, 419, 125 S. Ct. 1807 (2005), the Supreme Court found that a habeas petitioner's "lack of diligence preclude[d] equity's operation" and declined to toll the limitations period. The Supreme Court found a lack of diligence based upon petitioner's several-years delay in seeking post-conviction review in Pennsylvania state court *and* his five-months delay in filing a habeas petition after the conclusion of state-court collateral review. Id.; *see also Hermiz v. I.N.S.*, 86 F. App'x 44, 45 (6th Cir.2003) (equitable tolling denied in an immigration appeal when the petitioner did not make any inquiries regarding the status of his appeal for several years, and, after learning of the court's final decision to remove, he waited several months to file a motion to reopen); *Barry v. Mukasey*, 524 F.3d 721, 725 (6th Cir. 2008) (equitable tolling denied

7

in an immigration appeal because the petitioner showed a lack of diligence when, after learning of the need to file a motion to reopen, she waited over three months to do so); *Hardy v. Quarterman*, 577 F.3d 596, 599 (5th Cir. 2009) (habeas petitioner was diligent in pursuing his rights by filing a habeas petition within seven days of learning that the state court failed to provide notice that his state-post-conviction petition had been denied a year earlier).

The Court concludes that Petitioner's delay in filing his habeas petition after the conclusion of collateral review shows a lack of diligence which precludes equitable tolling of the limitations period.

### B. Actual Innocence

Petitioner also argues that equitable tolling should be granted because he is actually innocent.

A credible claim of actual innocence may equitably toll the one-year statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007)(citing *Souter*, 395 F.3d at 596).

A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific

8

evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077 (2006) (citation omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id*. (*quoting Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538, 126 S. Ct. at 2077.

First, the Court summarizes the evidence presented at trial. Christa Hughbanks and Petitioner had been dating for approximately two years before the assault on May 10, 2001. On that date, Christa and her sister Charlotte Hughbanks lived with their grandparents in Ypsilanti, Michigan. Christa and Petitioner came home at approximately midnight, and proceeded to Christa's bedroom almost as soon as they returned home. At the time, Christa was six months pregnant. After some time passed, Charlotte heard odd sounds coming from her sister's room. She went close to the closed door and heard

9

Petitioner telling Christa to get off him and Christa telling him she did not want him to leave.

When the sounds continued, Charlotte opened her sister's bedroom door and saw Christa fly in front of the door as if she had been pushed and fall on her stomach. Charlotte then saw Petitioner hit Christa with his fist either in the chest or abdomen. Charlotte's friend, Willie James Powell, attempted to intervene and Petitioner struck him as well. Christa locked herself in the bathroom and Petitioner knocked the door down. Willie James Powell testified that he saw Petitioner "stomping" Christa with his foot several times on her stomach.

Eventually, police were called and Christa was taken to the hospital. Dr. Frank Anderson, an obstetrician at the University of Michigan Medical Center, testified that he determined that Christa's baby would not survive if an emergency cesarean section was not performed. Dr. Anderson made this determination based upon a fetal heart rate of 40 beats per minute. When Dr. Anderson performed the c-section, he observed a partial placental abruption, which can be caused by cocaine use, pre-eclampsia, or abdominal trauma, including a motor vehicle accident or falling on one's stomach. Dr. Anderson further testified that the baby had an APGAR score of zero at one minute and again at five minutes after delivery. He testified that the baby was stillborn.

Dr. Mohammad-Ali Attar testified that he is a neonatologist employed by the University of Michigan Medical Center. Dr. Attar testified that he arrived at the hospital fifteen minutes after the baby's birth. His team, including a resident and a nurse

practitioner, were attempting to resuscitate the baby. Dr. Attar testified that the baby was stillborn.

Dr. Jonathon Homeister testified that he is a pathologist at the University of Michigan Medical Center and performed an autopsy of the baby. He testified that the cause of death was placental abruption.

Petitioner argues that there is new reliable evidence that the baby was born alive and that Petitioner, therefore, is innocent of assault on a pregnant person causing stillbirth. Petitioner relies on the following evidence in attempting to satisfy the actual innocence standard. First, Petitioner cites trial testimony in support of this argument. This testimony, obviously, is not "new" evidence because it was presented to and considered by the jury.

Second, he relies on the clinical records provided to the Placental Registry, a referral center for placental specimens operated by Michigan State University. Petitioner states that these records reveal two important facts: (1) that the baby's APGAR score, although initially a zero, was a one after five minutes; and (2) that the placenta revealed inflammatory cells showing placental abruption from hypertension. Dr. Carla Maureen Sander, a professor of pathology at Michigan State University, testified that she examined the placenta related to this case. She testified that she detected evidence of hypertension and that the fetus received an APGAR score of one after five minutes. Although the records themselves may not have been admitted into evidence, this evidence is not new because it was placed before the jury through Dr. Sander's testimony.

Finally, Petitioner relies on an interview conducted by police of Dr. Anderson on the day that the cesarean section was performed. In the interview, a copy of which is attached to the petition, Dr. Anderson told police that when he delivered the baby it had no spontaneous movement and no respiratory movement. He did not check for a heartbeat as his responsibility was to tend to the mother. The baby was taken to the resuscitation room. While operating on the mother, he inquired how the baby was doing and was told that the baby did not have a heartbeat. Dr. Anderson further told police that he briefly left the operating room and went to the resuscitation room where he observed a medical team working to resuscitate the baby. He noted that the baby's heartbeat was 67 because the medical team had given the baby drugs to stimulate the heart beat.

Petitioner does not claim that this transcript or the contents of this interview were unavailable to him prior to trial. Thus, it is not new evidence. In addition, the information in Dr. Anderson's interview is generally covered in his trial testimony, with the exception of the information regarding the baby's heartbeat. Petitioner argues that this testimony establishes that the baby was born alive. This evidence is insufficient to satisfy the *Schlup* standard.

Dr. Anderson indicated that the heartbeat was related to the drugs given to stimulate the baby's heartbeat. And, at trial, Dr. Anderson testified that the baby was stillborn and that he signed a certificate of stillbirth. Dr. Attar, the neonatologist, testified that, from the time the baby was given to his team, there were no signs of life, nor were there any signs of life when they tried to revive the baby. Epinephrine was administered

to the baby because it helps the heart to beat.  The team tried to resuscitate the baby for twenty minutes, but were unsuccessful.  Dr. Attar testified that the baby was stillborn.

In sum, the only evidence which might properly be considered new evidence is Dr. Anderson's report to the police that he observed a heart rate of 67 when the pediatric team was attempting to resuscitate the baby.  This evidence considered together with the evidence presented at trial, including Dr. Anderson's own testimony that the baby was stillborn, does not establish "that it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 327, 115 S. Ct. 851.  The Court will not equitably toll the limitations period and the petition is untimely.

### III. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2255 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

The Court finds that reasonable jurists could find its resolution of the equitable tolling issue to be debatable or wrong. Accordingly, the Court will grant a certificate of appealability.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that the habeas corpus petition was filed outside the one-year limitations period prescribed in 28 U.S.C. § 2244 (d)(1)(A).

Accordingly,

**IT IS ORDERED**, that Respondent's Motion to Dismiss is **GRANTED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability is **GRANTED** with respect to whether Petitioner is entitled to equitable tolling of the AEDPA's statute of limitations.

Dated: March 15, 2011

                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

James S. Lawrence, Esq.
AAG Laura Cook